# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

JOSEPH JACKSON,

    Plaintiff,

v.                                     No. 03 C 3767
                                         Judge James B. Zagel

RESTAURANT DEPOT,

    Defendant.

## MEMORANDUM OPINION AND ORDER

Defendant Restaurant Depot ("Depot") is in the wholesale restaurant equipment and food service business. In April 2001, Depot hired Plaintiff Joseph Jackson ("Jackson") as a "hi-lo" forklift driver. On October 17, 2001, Jackson took off work in order to respond to a summons to jury duty in Cook County. That evening, his managers held a mandatory staff meeting for all employees, which Jackson did not attend. Upon his return, Jackson was suspended for three days for failing to attend the meeting. In January 2002, Jackson was sent home for one day without pay after his manager reported that Jackson was unorganized and insubordinate. Two months later, Jackson was fired after another manager reported that Jackson had again failed to keep his area clean and organized.

Jackson filed suit in federal court alleging that he was the victim of impermissible discrimination when he was denied overtime because of his race and that Depot fired him in retaliation for his complaints of discrimination. Jackson also complains that Depot violated federal and Illinois jury duty statutes when it suspended him for failing to attend a staff meeting that occurred on the same day Jackson was called to jury service. Depot argues that Jackson

cannot claim discriminatory denial of overtime work when he failed to request overtime but nevertheless worked overtime during the relevant period; that Jackson cannot establish a *prima facie* case of retaliation; and that Jackson cannot avail himself of the protection of the Illinois statute because he failed to deliver a copy of his jury summons to Depot before reporting to jury service. For these reasons, Depot has moved for summary judgment of Jackson's claims.

Summary judgment is proper if the "pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." *Fed. R. Civ. P. 56(c). See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322-33 (1986). A genuine issue of material fact exists when there is evidence on the basis of which a reasonable jury could find in the plaintiff's favor, allowing for all reasonable inferences drawn in a light most favorable to the plaintiff. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986). Summary judgment is not the time for credibility determinations or to "choose between competing inferences." *Sarsha v. Sears, Roebuck & Co.*, 3 F.3d 1035, 1041 (7th Cir. 1993) (citation omitted). However, Jackson must offer more than "[c]onclusory allegations, unsupported by specific facts" to establish a genuine issue of material fact. *Payne v. Pauley*, 337 F.3d 767, 773 (7th Cir. 2003) (citation omitted). For each element of his case, Jackson must "designate specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324 (internal quotations omitted).

It is difficult to construct a more thorough review of the facts of this case on the basis of the record before me. Plaintiff's *pro se* status entitles him to considerable leeway in framing his arguments; nonetheless he is required to follow Local Rule 56.1 in presenting facts in defense of Depot's motion. For the large part, he has failed to do so, and for the large part I credit the un-

2

rebutted statements of fact offered by Depot. However, Depot also failed to support some of the facts offered in its motion and supporting Local Rule 56.1 statement; for example, Depot consistently cites to transcripts of Jackson's deposition as evidence, yet the transcript excerpts attached to its motion are incomplete, arguably take statements out of context, and on occasion conflict with the purported statements of fact they supposedly support. I carefully reviewed the facts offered by both sides and have ignored those facts lacking adequate support and construed the facts in Jackson's favor to the extent possible.

***Jackson's Claim of Discrimination for Failure to Award Overtime***

Jackson complains that Depot denied him opportunities to work overtime from September 2001 to late October 2001, but granted overtime opportunities to similarly situated employees who were not African American. Depot argues that Jackson's own testimony forecloses this complaint, claiming that Jackson admits that he never asked for overtime and actually refused overtime that was offered to him. If true, Jackson's claim of discrimination would be weak indeed. *See, e.g., Thomas v. Honeywell Corp.*, No. 00 C 50022, 2003 U.S. Dist. LEXIS 4948, at *4 (N.D. Ill. Mar. 31, 2003) (suggesting that overtime claim would fail where plaintiff was offered and worked some overtime); *and West v. Maxon Corp.*, No. IP 98-0339-C 2001 U.S. Dist. LEXIS 22228, at *11 (S.D. Ind. Dec. 10, 2001) (finding that denial of overtime is not an adverse action when employee admits to turning down overtime assignments).

Once again Depot relies on Jackson's deposition as evidence that Jackson never asked for overtime (Def. Exh. 1 at 140, 144); never asked for overtime that was denied by his managers (Def. Exh. 1 at 142); accepted and worked overtime offered by his managers (Def. Exh. 1 at

3

135); and rejected other overtime offers (Def. Exh. 1 at 140, 142, 144).[1] These pages of Jackson's deposition testimony establish only that Jackson would not ask for overtime if he worked beyond his shift, because he did not think his managers would approve his request and that he asked his managers why Hispanic employees were awarded overtime when he was not. Jackson's testimony is simply not the evidence Depot suggests it is.

There is a better ground on which to dismiss Jackson's claim: his failure to establish a *prima facie* case of discrimination. In the absence of direct evidence of discrimination, a plaintiff alleging discrimination in violation of Title VII, 42 U.S.C. § 2000(e) *et seq.*, must establish discrimination through the "indirect method" established in *McDonnell Douglas*. *See Cerutti v. BASF Corp.*, 349 F.3d 1055, 1061(7th Cir. 2003). That test requires Jackson to show that Depot treated other similarly situated employees outside of his protected class more favorably. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).

Fatal to Jackson's claim of discrimination is his failure to offer admissible, comparative evidence of the number and types of overtime opportunities denied him but offered to similarly situated employees outside of his protected class. *See Conley v. Village of Bedford Park*, 215 F.3d 703, 711-12 (summary judgment appropriate when plaintiff cannot substantiate allegations that overtime was denied for discriminatory reasons; plaintiff's failure to "set forth any specific times that [Defendant] gave others overtime opportunities, but denied the same to him" in

---

[1] Jackson's testimony regarding access to overtime work begins prior to page 140; nonetheless, Depot fails to offer these pages of his testimony. In fact, Depot failed to attach pages 139, 141 and 143 of Jackson's testimony despite relying on the alternating, even pages (all of which address the same topic). As submitted, the record contains incomplete statements and lacks context, and I hesitate to rely too heavily on it.

combination with self-serving assertions could not defeat summary judgment). Jackson's response contains only self-serving, unsupported allegations of discrimination, such as his claim that Hispanic workers "would get the overtime over African-Americans." (Pl. Resp. at 4.) Neither these statements nor the handwritten documents attached to Jackson's response are sufficient under Local Rule 56.1 or the Federal Rules of Civil Procedure to avoid summary judgment.[2]

*Jackson's Claim of Retaliation*

Jackson also claims that Depot first suspended him and then fired him in retaliation for his complaints about race discrimination. Jackson alleges that sometime in 2001, Depot manager Eric Reaves informally approached a group of African American employees including Jackson and asked if they had suffered discrimination on account of their race at Depot. Jackson avers that he and others responded affirmatively, but gave Reaves no additional feedback. Jackson and other African American employees later met with Reaves and Jackson's manager, Andres Trejos, to discuss the allegations of discrimination. At that meeting Jackson complained of discrimination against African Americans and favoritism toward Hispanic employees.[3] Jackson

---

[2] Jackson's Exhibits No. 6 and 42, which contain his unsworn handwritten notes regarding the schedules of Hispanic co-workers, does not satisfy Rule 56(e). *See Fed. R. Civ. P. 56(e)* ("[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated herein").

[3] Jackson believed that Depot employees were segregated into race-based work teams (one Hispanic and one African-American) and that the African-American team was subjected to much greater work requirements and harsher disciplinary measures while simultaneously deprived of benefits such as overtime and adequate lunch breaks, which were extended to Hispanic employees.

believes his termination was in retaliation for his complaints both at the initial, informal gathering and at the meeting where manager Trejos was present.

Jackson offers no direct evidence that he was disciplined and fired as a result of his complaints of discrimination. Jackson's unwavering conviction that his complaints led to his termination is not direct evidence of retaliation. *See Stone v. City of Indianapolis*, 281 F.3d 640, 644 (7th Cir. 2002) (noting that direct evidence is "evidence that establishes without resort to inferences from circumstantial evidence"). Nor is the timing of his discharge, whether five months (as Jackson suggests) or eleven months (as Depot suggests) after the meeting in which Jackson allegedly complained of discrimination, direct evidence of retaliation.[4] *See id.* ("mere temporal proximity between the filing of the charge of discrimination and the action alleged to have been taken in retaliation for that filing will rarely be sufficient in and of itself to create a

---

[4]In his deposition, Jackson identified (with some hesitation) July to August 2001 as the period during which Floor Department employees were segregated and in which he complained of discrimination. Depot insists that the relevant time period is much earlier – between April and June 2001 – because of Jackson's claim that the meeting in which he complained of discrimination occurred in Branch Manager Matt D'Ambrosio's office. D'Ambrosio transferred out of the location where Jackson worked in June 2001. Depot argues that Jackson cannot harbor an objectively reasonable belief that Floor Department employees were segregated at that time because store records indicate that in April and May of 2001 the racial composition of both Floor Department teams was balanced.

In his response to Depot's motion Jackson insists that the segregation of the Floor Department and the meeting in which he complained of discrimination occurred much later in 2001. Although a party may not attempt to survive summary judgment by creating a genuine issue of fact that contradicts a previous sworn statement, *see Cleveland v. Policy Mgmt. Sys. Corp.*, 526 U.S. 795, 806 (1999), Jackson's most recent affidavit is consistent with the allegations made in his initial complaint of discrimination filed with the EEOC. Moreover, Jackson did not testify (at least in the scattered excerpts of his testimony relied on by Depot) that D'Ambrosio attended the meeting, but that the meeting occurred in his office and that the managers who attended were Reaves and Trejos, not D'Ambrosio. I accept for purposes of summary judgment Jackson's assertion that the segregation and his complaints of discrimination occurred in September or October 2001.

triable issue"). Most importantly, the decision-makers who disciplined and fired Jackson in 2002 – Chuck Spirk and Dan Nicholas – were not present at the meeting where Jackson complained of discrimination, and he has presented no evidence that they knew of this protected activity.

Therefore, to withstand summary judgment of this claim Jackson must establish that: a) he engaged in a statutorily protected activity, b) he performed his job according to Depot's legitimate expectations, c) despite his satisfactory performance he suffered an adverse employment action, and d) he was treated less favorably than similarly situated employees who did not engage in statutorily protected activity. *Id*. (noting that plaintiffs seeking to prevent summary judgment of retaliation claims may resort to an adaptation of the *McDonnell Douglas* test when they lack direct evidence of discrimination). *See also Williams v. Waste Mgmt. of Ill. Inc.*, 361 F.3d 1021, 1031 (7th Cir. 2004) (identifying the criteria for establishing a *prima facie* case for retaliation) (citing *Sitar v. Ind. DOT*, 344 F.3d 720, 728 (7th Cir. 2003)). Depot contends that Jackson cannot satisfy any of these criteria.

Because it is a sufficient ground for granting summary judgment, I address here only the argument that Jackson was not meeting Depot's legitimate expectations at the time he was fired. Jackson was first disciplined, then fired, for failing to ensure that the store aisles to which he was assigned as a hi-lo driver were properly maintained. On January 16, 2002, Branch Manager Chuck Spirk issued the following disciplinary memorandum to Jackson.

> On 1/16/02 Joe was approached by me as to why there were no cases of a product on the shelf that came into the store five days prior. Joe admitted that he had dropped the product for a count to be done the prior day and then simply put the pallet back in the air rather than packing the product onto the shelf. When Joe started to raise his voice in the aisle I brought the conversation into the office so that we could talk about it. Joe must understand that part of his

7

> job is to make sure that the products in the store are packed onto
> the shelves and see to it that if they are out it is brought to a
> manager's attention. For his lack of organization and for his
> further insubordination Joe is being sent home for one day without
> pay. Any further occurrences of poor work performance or
> insubordination will result in termination of employment.

(Def. Exh. 11.) Jackson disagrees that he was responsible for packing products on Depot's shelves, raised his voice, or was insubordinate. (Def. Exh. 1 at 175-179.) What Jackson does not contest is the fact that Spirk suspended him because he believed Jackson had failed to fulfill his responsibilities. (Id. at 180-182.) That unrebutted justification for his suspension, and Jackson's failure to rebut the evidence that his managers subsequently fired him for again failing to meet their expectations, entitles Depot to summary judgment of Jackson's claim of retaliation.[5] *See Stone*, 281 F.3d at 644 ("[i]f the defendant presents unrebutted evidence of a noninvidious reason for the adverse action, he is entitled to summary judgment").

***Violations of Illinois Jury Duty Statute[6]***

Jackson's final complaint is that Depot improperly suspended him without pay for failing to attend a mandatory staff meeting held the same day Jackson was summoned to jury service in Cook County. Illinois law prohibits employers from discharging, threatening with discharge,

---

[5]On March 19, 2002, Assistant Branch Manager Dan Nicholas issued a similar memo that resulted in Jackson's discharge. (Def. Exh. 12.) I note that Jackson does not argue that Spirk's and Nicholas's expectations of his performance arose from an impermissible racial bias or a desire to retaliate against him; rather, he argues that the men held different, and therefore improper, expectations of him from those described to him at the time he was hired as a hi-lo driver.

[6]Jackson cannot raise a claim under the Jury Systems Improvements Act of 1978, 28 U.S.C. § 1875(a) (the "federal jury duty statute"), as he was called to state, not federal, jury service.

intimidating or coercing employees called to jury service. 705 ILCS 305/4.1(b) (2005). An employee must "give[ ] reasonable notice of required jury service" to the employer. 705 ILCS 305/4.1(c). The reasonable notice requirement is satisfied when "the employee summoned for jury duty . . . deliver[s] to the employer a copy of the summons within 10 days of the date of issuance of the summons to the employee." *Id*.

Depot, relying solely on Jackson's deposition testimony, argues that Jackson failed to deliver a copy of the summons prior to his jury service.[7] Jackson's deposition testimony reads:

> Q: What did you receive that told you you needed to show up for jury duty?
> A: Jury duty summons.
> Q: How far in advance of jury duty did you get that?
> A: I don't know.
> . . .
> Q: When you got that jury summons, you received it where?
> A: At my house.
> Q: Did you bring that into work and give a copy of it to somebody at work?
> A: He didn't take no copy.
> Q: Who is he?
> Mr. Powell: the Question is did you take it in?
> A: Yes, I took it in.
> Q: Who did you show it to?
> A: Excuse me?
> Q: Who did you show it to?
> A: I showed it to Trejos [Jackson's immediate supervisor].

---

[7]Depot might also have relied on the affidavit of Gerry Mangual, Des Plaines Branch Manager in October 2001, who averred that Jackson never delivered a copy of his jury summons to Depot. Nonetheless, as explained *infra*, this evidence creates a factual dispute; it does not necessitate summary judgment in Depot's favor.

9

> Q: When in relation to when you received it did you take it in and show it to Trejos?
>
> A: About two weeks before I had jury duty.
>
> Q: What did Trejos say?
>
> A: He told me to keep reminding him that I had jury duty on that particular day.
>
> Q: Did he tell you why he wanted you to keep reminding him?
>
> A: So he could get me that day off for jury duty.

(Def. Exh. 1 at 203-05.) I do not find these facts nearly as one-sided as Depot suggests. To the contrary, the inference to be drawn from Jackson's deposition testimony is that he delivered a copy of his summons to his manager, not that he failed to do so as Depot suggests.

Both sides agree that Jackson did not work on October 17. In his response to Depot's motion, Jackson avers that he requested to have October 17 off after receiving notice that he was summoned to jury service and that his manager Andres Trejos gave him the day off. (Pl. Resp. at 6.) He also avers that he provided Trejos with his un-cashed juror's check on October 18, when he reported to work to pick up his schedule (the same day he was informed that he would be suspended for three days for failing to attend the mandatory employee meeting the night before). (Id. at 8.) Viewing the evidence in the light most favorable to him, I find that Jackson has established a factual dispute as to whether he provided his employer with notice of his summons to jury duty. This is precisely the sort of dispute that should not be decided on a motion for summary judgment, and for that reason Depot's motion for summary judgment of this count is denied.

That does not, however, end my consideration of this claim. Federal jurisdiction over this state-law claim is based on the supplemental jurisdiction statute, 28 U.S.C. § 1367. That statute provides that "a district court 'may decline to exercise supplemental jurisdiction' over pendent

state-law claims if the court has dismissed all claims over which it has original jurisdiction." *Wright v. Associated Ins. Cos.*, 29 F.3d 1244, 1250 (7th Cir. 1994) (quoting 28 U.S.C. § 1367(c)(3)). In most cases, a district court will dismiss a pendent state-law claim when the federal claims are dismissed prior to trial. *Id*. An exception to that rule arises when the state statute of limitations has run on the pendent claim, preventing the plaintiff from raising the claim in state court. *Id*.; *see also Duckworth v. Franzen*, 780 F.2d 645, 656 (7th Cir. 1985).

It is unclear whether Jackson could, in state court, timely file a claim that Depot violated the Illinois jury duty statute. If the statute of limitations for the claim has expired, Jackson might be entitled to pursue his claim in state court under the Illinois "savings provision."[8] As neither party addressed the issue of supplementary jurisdiction, I will retain jurisdiction of this claim until Depot can demonstrate that Jackson's re-filed claim would fall within the applicable statute of limitations or that his claim would be eligible for the "savings provision" in state court. Alternatively, I will dismiss the claim if Depot agrees to waive any statute of limitations defense should Jackson file his claim in state court within one year of my dismissal of the claim.[9]

---

[8]Illinois law provides that a case dismissed by a federal court on jurisdictional grounds can be refiled within one year in state court even if the statute of limitations has expired at the time of re-filing. *See* 735 ILCS 5/13-217 (2005) (often referred to as the "savings provision"). Illinois courts have held that this provision gives plaintiffs an "absolute right to refile [a] complaint within one year" or within the applicable statute of limitations, whichever is longer. *Tuch v. McMillen*, 521 N.E.2d 1218, 1220 (Ill. App. Ct. 1988). *See also Hinkle by Hinkle*, 85 F.3d 298, 302 (7th Cir. 1996). The original suit must have been timely filed for the savings provision to apply. *Malone v. Bankhead Enters.*, 125 F.3d 535, 538 (7th Cir. 1997).

[9]As a final option, Depot may wish to concede liability on this issue and proceed directly to the issue of damages.

For these reasons, Defendant's Motion for Summary Judgment of Jackson's claims of discrimination and retaliation in violation of Title VII is GRANTED. Defendant's Motion for Summary Judgment of Jackson's claim of a violation of the Illinois Jury Duty Statute is DENIED.

ENTER:

*James B. Zagel*

James B. Zagel
United States District Judge

DATE: October 18, 2005